# EXHIBIT "A"

FILED 5/20/2025 2:19 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/JW

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CIVIL DIVISION – LAW

| | |
|---|---|
| TYLER DENGLER<br>558 Benner Road, Apt 202<br>Allentown, PA 18104 | :<br>:<br>: |
|                Plaintiff, | : |
|    v. | :<br>: |
| | : |
| KRIS SPERZEL<br>6178 S. New York Avenue<br>Cudahy, WI 53110<br>&<br>ULINE, INC.<br>**Address:**<br>12575 Uline Drive<br>Pleasant Prairie, WI 53158<br>**Address:**<br>700 Uline Way<br>Allentown, PA 18106<br>&<br>Risinger Brothers Transfer Inc.<br>225 W. Courtland Street<br>Morton, IL 61550<br>&<br>John Doe Driver, believed to be an employee of<br>Risinger Brothers & Driver of Subject<br>Tractor Trailer | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
|              Defendants. | : |

**No.: 2025-C-2055**

CIVIL DIVISION

JURY TRIAL OF TWELVE
(12) DEMANDED

### NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE, IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

FILED 5/20/2025 2:19 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/JW

Lehigh County Bar Association
Lawyer Referral Service
PO Box 1324
Allentown, PA 18105-1324
Telephone No.  610-433-7094


SCHERLINE INJURY LAW

BY: _____

Edith C. Rysdyk, Esquire
Scherline Injury Law
902 W. Hamilton Street Suite 120
Allentown, Pa 18101
610-437-1100
Supreme Court ID Number:  72633

FILED 5/20/2025 2:19 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/JW

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

| | |
|---|---|
| TYLER DENGLER<br>558 Benner Road, Apt 202<br>Allentown, PA 18104 | :<br>:<br>: |
|           Plaintiff, | : |
|    v. | :<br>: |
| | :<br>: |
| KRIS SPERZEL<br>6178 S. New York Avenue<br>Cudahy, WI 53110 | :<br>:<br>: |
|      & | : |
| ULINE, INC.<br>**Address:**<br>12575 Uline Drive<br>Pleasant Prairie, WI 53158<br>**Address:**<br>700 Uline Way<br>Allentown, PA 18106 | :<br>:<br>:<br>:<br>:<br>:<br>: |
|     & | : |
| Risinger Brothers Transfer Inc.<br>225 W. Courtland Street<br>Morton, IL 61550 | :<br>:<br>: |
|     & | : |
| John Doe Driver, believed to be an employee of<br>Risinger Brothers & Driver of Subject<br>Tractor Trailer | :<br>:<br>: |
|           Defendants. | : |

**No.:**

CIVIL DIVISION

JURY TRIAL OF TWELVE
(12) DEMANDED

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:    Edith C. Rysdyk, Esquire

Signature:

Name:        Edith C. Rysdyk, Esquire

Attorney No. (if applicable):    72633

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

| | | |
|---|---|---|
| TYLER DENGLER | : | |
| 558 Benner Road, Apt 202 | : | **No.:** |
| Allentown, PA 18104 | : | |
| Plaintiff, | : | CIVIL DIVISION |
| v. | : | |
| | : | JURY TRIAL OF TWELVE |
| | : | (12) DEMANDED |
| KRIS SPERZEL | : | |
| 6178 S. New York Avenue | : | |
| Cudahy, WI 53110 | : | |
| & | : | |
| ULINE, INC. | : | |
| **Address:** | : | |
| 12575 Uline Drive | : | |
| Pleasant Prairie, WI 53158 | : | |
| **Address:** | : | |
| 700 Uline Way | : | |
| Allentown, PA 18106 | : | |
| & | : | |
| Risinger Brothers Transfer Inc. | : | |
| 225 W. Courtland Street | : | |
| Morton, IL 61550 | : | |
| & | : | |
| John Doe Driver, believed to be an employee of | : | |
| Risinger Brothers & Driver of Subject | : | |
| Tractor Trailer | : | |
| Defendants. | : | |

## COMPLAINT

AND NOW, comes the Plaintiff, Tyler Dengler, by and through his attorneys, Scherline Injury Law, in support of his Complaint against the Defendants Kris Sperzel, Uline, Inc., Risinger Brothers Transfer Inc., and John Doe, aver the following:

## THE PARTIES

1.      Plaintiff Tyler Dengler is an adult individual who resides at 588 Brenner Road, Apartment 202, Allentown, Lehigh County, Pennsylvania 18104.

2.      Defendant Kris Sperzel, (hereinafter Defendant Sperzel) is an adult individual believed to be residing at 6178 S. New York Avenue, Cudahy, WI, 53110.

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

3.      Defendant Uline, Inc., (hereinafter "Defendant Uline"), is believed and therefore averred to be a foreign corporation, organized and existing under the laws of Delaware, with a principle place of business located at 12575, Uline Drive, Pleasant Prairie, WI, 53158, and doing business in Pennsylvania, with business located at 700 Uline Way, Allentown, Lehigh County, Pennsylvania, 18106.

4.      Defendant Uline regularly conducts business in Lehigh County, Pennsylvania.

5.      Defendant Risinger Brothers Transfer Inc., (hereinafter "Defendant Risinger"), is believed and therefore averred to be a foreign corporation, organized and existing under the laws of Illinois, with a principle place of business located at 225 W. Courtland Street, Morton, IL 61550. Defendant Risinger is in the business of providing transportation services.

6.      Defendant Risinger regularly conducts business in Lehigh County, Pennsylvania.

7.      Defendant John Doe Driver (hereinafter Defendant Doe), upon information and belief, is an adult individual and a citizen of Illinois, who was employed by Defendant Risinger, at all times as a truck driver with Defendant Risinger, and who may have been responsible for inspecting the cargo in the trailer.  Defendant John Doe is currently unknown to Plaintiff and his Counsel.

8.      The incident alleged herein occurred in Lehigh County Pennsylvania.

## PRELIMINARY FACTUAL ALLEGATIONS

9.      At all times relevant hereto, Plaintiff Tyler Dengler was an employee of J.B. Hunt Transport, Inc., who was assigned as a yard jockey/spotter at Defendant Uline, located at 700 Uline Way, Allentown, Lehigh County, PA 18106.

10.     At all times relevant hereto, Plaintiff Tyler Dengler was in the full course and scope of his employment with J.B. Hunt Transport, Inc.

11.     The truck and trailer whose cargo fell on Plaintiff Tyler Dengler on November 7, 2023, was owned my Defendant Risinger.

12.     The trailer whose cargo fell on Plaintiff Tyler Dengler on November 7, 2023,was owned by Defendant Uline.

13.     The trailer whose cargo fell on Plaintiff Tyler Dengler was owned by Defendant Risinger.

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

14.     At all relevant times, Defendant Risinger rented/leased the subject trailer to Defendant Uline.

15.     The cargo (believed to be corrugated cardboard boxes) which fell out of the trailer, striking and injuring Plaintiff Tyler Dengler, was owned and belonged to Defendant Uline.

16.     On or about November 7, 2023, at or about 6:45 p.m., Plaintiff Tyler Dengler opened the subjected trailer backdoor, when a bale of corrugated boxes fell onto his body, including his face and chest, causing him to fall violently to the ground, and sustained serious injuries.

17.     Defendant Uline and Defendant Risinger entered into a contract, a Master Transportation Agreement, in which Defendant Uline hired Defendant Risinger to provide transport services, including transporting Uline products between Defendant Uline's various locations, including from Uline's Pleasant Prairie, Wisconsin, and Allentown, Pennsylvania. A copy of the contract is Exhibit A.

18.     Defendant Uline and JB Hunt entered into a contract, where JB Hunt supplied independent contractors to work in the Allentown facility as a yard jockeys to provide transport services, including transporting Uline products between Defendant Uline's various locations, including from Uline's Pleasant Prairie, Wisconsin, and Allentown, Pennsylvania. A copy of the contract is Exhibit B.

19.     Upon information and belief, Defendant Risinger and it's agent/employee, Defendant John Doe, transported the corrugated boxes from Pleasant Prairie, Wisconsin on November 6, 2023, to Uline's Allentown, Pennsylvania facility on or about November 7, 2023.

20.     Defendant Uline sells an extensive variety of equipment designed to secure cargo for transport, including, but not limited to, load bars, shoring beams, ratcheting cargo bars, lock bars, E-track load bar, strapping (steel and plastic), tie downs, winch straps and chains, hereinafter referred to as cargo securement devises. The purpose of cargo securement devices to prevent cargo from shifting during transport and to prevent cargo from falling onto individuals, as Plaintiff Tyler Dengler, who participate in unloading cargo so as to protect individuals from injury.

21.     At all relevant times, Defendant Sperzel was/is an agent, ostensible agent, servant, workman and/or employee of Defendant Uline, was acting within the scope and in furtherance of his duties as an agent, ostensible agent, servant, workman and/or employee of Defendant Uline, including when he loaded the trailer and secured the cargo.

3

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055      /s/DV

22.     At all relevant times, Defendant Uline hired Defendant Sperzel to load subject Risinger trailer (hereinafter "subject trailer") at its 11400 88th Avenue, Pleasant Prairie, WI 53158, warehouse, which was delivered to the 700 Uline Way, Allentown, PA 18106, warehouse location.

23.     At all times relevant hereto, Defendant Sperzel loaded the trailer with bales of corrugated boxes, which fell onto Plaintiff Tyler Dengler.

24.     At all relevant times, there were no other drop-offs or pick-ups scheduled in between the time the tractor trailer was loaded by Defendant Sperzel, and when Plaintiff Tyler Dengler opened the doors.

25.     It is believed and therefore averred that prior to November 7, 2023, Defendant Sperzel may have been guilty of repeated loading violations, may have been involved in several prior loading accidents, may have habitually loaded trailers in a careless manner, and had repeatedly and constantly evidenced a course of conduct which lead, or should have lead, Defendants Uline to know that Defendant Sperzel would load the trailer in such a manner as to create an unreasonable risk to others. Whether these actions occurred depends upon facts within the exclusive knowledge of Defendants; knowledge unavailable to anyone in Plaintiffs' position except through the formal discovery process.

26.     It is believed and therefore averred that at the time Defendant Uline employed Defendant Sperzel to load trailers and gave Defendant Sperzel permission to load the subject trailer, as aforesaid, that they knew, or in the exercise of reasonable care, should have known that Defendant Sperzel was unfit or incompetent to load the trailer, and was likely to load the trailer in such a manner as to create an unreasonable risk of harm to others, including Plaintiff Tyler Dengler and/or that there were problems with the trailer.

27.     After Defendant Sperzel loaded the subject trailer, Defendant John Doe then drove the tractor and subject trailer from Uline's facility in Pleasant Prairie, Wisconsin, to Uline's facility in Allentown, Pennsylvania.

28.     Plaintiff was unable to speak to Defendant Doe at the scene, as the tractor had already been detached from the trailer at the time Plaintiff Tyler Dengler

29.     Plaintiff is unable to identify Defendant Doe's correct name and identity as of the date of the filing of this Civil Action Complaint.

30.     Upon information and belief, Defendant Doe's name and address are in possession Defendant Risinger, which hired, trained, and entrusted a Risinger truck to Defendant Doe.

4

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

31.    At all times material hereto Defendant Doe was operating a tractor trailer leased, controlled, maintained, provided to him/her entrusted to him/her, and/or rented by Defendant Risinger.

32.    At all times material hereto Defendant Doe was a duly authorized agent, servant, worker, and/or employee of Defendant Risinger.

33.    At all times material hereto Defendant Doe was in the course and scope of his/her agent, servant, work and/or employment relationship with Defendant Risinger, and working in the furtherance of Defendant Risinger's interests.

34.    At all times material hereto Defendant Risinger acted or failed to act by and through its duly authorized agents, servants, workers, and/or employees including but not limited to Defendant Doe.

35.    At all times relevant hereto Plaintiff Tyler Dengler acted in a safe, careful and prudent manner.

36.    The negligence and/or carelessness exhibited by Defendants was a direct, proximate and/or factual cause of the subject incident and the injuries, damages, harms and losses to Plaintiff Tyler Dengler.

37.    As a direct, proximate and/or factual cause of the aforesaid incident, and the negligence and carelessness of the Defendants, Plaintiff Tyler Dengler sustained serious injuries to his head and body, including, inter alia, the following:   cervical fracture at C1; thoracic fractures at T3-T6; concussion; post-concussion syndrome; overall pain and stiffness; difficulty sleeping; loss of sleep; pain and suffering; and loss of mobility.

38.    Some or all of the injuries sustained by Plaintiff Tyler Dengler may be permanent in nature.

39.    Some or all of the injuries sustained Tyler Dengler may constitute the aggravation of a pre-existing injury, illness or condition.

40.    As a result of the foregoing, Plaintiff Tyler Dengler has undergone and will continue to undergo numerous treatments, procedures, injections, repairs, medications, physical therapy, hospital, surgical, nursing, and medical treatment and therapy, to alleviate the pain and disability and has incurred and may in the future incur medical, injection and surgical expenses in an endeavor to cure his aforesaid injuries all of which medical attention and care and resultant invoices were and will be reasonable and necessary for the injuries suffered by him, all to his great financial detriment, loss, and expense.

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055        /s/DV

41.    As a result of the foregoing, Plaintiff Tyler Dengler remains disabled, either totally or partially, and has suffered a loss of earnings and may suffer a loss of future earnings and a diminution in earning capacity.

42.    As a result of the foregoing, Tyler Dengler has suffered extreme and excruciating pain and suffering and will continue to experience such pain and suffering in the future.

43.    As a result of the foregoing, Tyler Dengler has suffered and will continue to suffer from humiliation, embarrassment, mental anguish, bodily pain, disability, suffering, shock, depression, distress and injury to his nerves and nervous system and skeletal system, and may continue to suffer same in the future, all to his great financial detriment and loss.

44.    As a result of the foregoing Plaintiff Tyler Dengler may suffer permanent scarring and disfigurement.

45.    As a result of the foregoing, Plaintiff Tyler Dengler has been unable to perform and continues to be unable to perform his usual and daily occupations and duties for an indefinite period all to his great financial detriment and loss.

46.    As a result of the foregoing, Plaintiff Tyler Dengler has been unable to perform or enjoy the normal and ordinary physical activities and pleasures of life, which loss of enjoyment may continue indefinitely into the future, all to his great detriment and loss.

47.    As a result of the foregoing, Plaintiff Tyler Dengler has suffered and will continue to suffer a loss of life's pleasures and enjoyments, and has been and will continue in the future to be unable to attend to his customary and usual daily activities, occupations, duties and familial responsibilities and avocations, all to his great detriment and loss, financial and otherwise.

48.    As a result of the foregoing, there is/are or may be in the future unpaid/unreimbursed medical expenses, copays, deductibles, wage loss, ERISA liens, HMO liens, Medicare liens, Medicaid liens, medical and/or wage loss benefits, a lien for worker's compensation benefits, short term disability liens, subrogation claims for amounts paid for medical expenses and/or wage loss, public assistance benefits, and other expenses and/or losses on behalf of Plaintiff Tyler Dengler.

49.    As a result of the foregoing, Plaintiff Tyler Dengler has incurred and/or will incur various expenses for travel to his doctors' appointments for treatments, housekeeping services, shopping services and other incidental costs.

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

## COUNT I
### PLAINTIFF TYLER DENGLER vs. DEFENDANT KRIS SPERZEL
### NEGLIGENCE

50.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 49 above as if same were set forth fully at length herein.

51.    Defendant Sperzel owed to Plaintiff Tyler Dengler a duty of care in the loading the subject Risinger trailer.

52.    Defendant Sperzel breached the duty of care he/she owed to Plaintiff Tyler Dengler and acted negligently and carelessly by:

a.    Failing to secure cargo properly as to prevent the cardboard to become unsecure and fall on Plaintiff Tyler Dengler, in violation of regulations outlined at 49 CFR Part 39 3, Subpart I § 393.100 through 393.114;

b.    Failing to use cargo securement system to secure the load so it was capable of withstanding the forces of acceleration and deacceleration in violation of 49 CFR § 393.102;

c.    Failing to secure the cargo on all sides, especially towards the doors in violation of 49 CFR § 393.100 through 393.110;

d.    Allowing space to remain between the bales of cardboard and the container (trailer walls) and not having the cargo blocked, braced or immobilized in violation of 49 CFR § 393.110;

e.    Failing to use cargo containment systems, which outline the requirements of 49 CFR § 393.102, including breaking strength and working load limit;

f.    Using cargo securement devices and systems, which were damaged or defective in violation of 49 CFR § 393.104, et al;

g.    Failing to use tiedown strapping that meet manufacturing standards so they broke and failed to hold the cargo in violation of 49 CFR § 393.104(e)

h.    Using tiedowns, which contained knots, in violation of 49 CFR § 393.104(f);

i.    Failing to attach and secure tiedowns so as to prevent them from becoming loose, unfastened, opened or

7

releasing during transit in violation of 49 CFR § 393.104(f);

j.    Using tiedown assembles of insufficient workload limit in violation of 49 CFR § 393.102;

k.    Failing to use friction mats, or friction mats that did not provide appropriate friction in violation of 49 CFR § 393.108;

l.    Failing to use strong enough synthetic cordage in violation of 49 CFR § 393.108;

m.    Failing to use sufficient number of tiedowns to secure the cargo in violation of 49 CFR § 393.110, which allowed cargo to shift and fall on Plaintiff Tyler Dengler;

n.    Failing to meet general requirement for securing cargo in violation of 49 CFR § 393.106, including failing to firmly immobilize and/or securing cargo within the vehicle and failing to use structure of adequate strength, dunnage or dunnage bags, shoring bars, tiedowns or a combination of these;

o.    Failing to use tiedowns, which can be adjusted and tightened in violation of 49 CFR § 393.112.

p.    Loading the subject Risinger trailer with bales of corrugated boxes in a careless manner, and causing the boxes to fall on Plaintiff Tyler Dengler;

q.    Failing to secure the bales of corrugated boxes that were loaded on the subject Risinger trailer, so the boxes would not fall on Plaintiff Tyler Dengler;

r.    Failing to warn Plaintiff Tyler Dengler that the bales of corrugated boxes were not properly secured, and would fall him;

s.    Failing to inspect that the bales of corrugated boxes to ensure they were properly and safely secured on the Risinger trailer, and causing the boxes to fall on Plaintiff Tyler Dengler;

t.    Failing to observe the existing conditions of the bales of corrugated boxes were properly secured, and causing the boxes to fall on Plaintiff Tyler Dengler;

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

u.  Loading the subject Risinger trailer with bales of corrugated boxes without due regard to the rights and safely of Plaintiff Tyler Dengler;

v.  Loading the subject Risinger trailer in such a manner as to cause serious and severe injuries to Plaintiff Tyler Dengler;

w.  Failing to properly load and secure the bales of corrugated boxes under the circumstances, and causing the bales of corrugated boxes to fall on Plaintiff Tyler Dengler;

x.  Failing to load the bales of corrugated boxes onto subject trailer in a safe and secure manner, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment, causing the bales of corrugated boxes, causing them to fall on Plaintiff Tyler Dengler;

y.  Proceeding to load the subject Risinger trailer in an unsafe manner, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment, causing the bales of corrugated boxes to fall on Plaintiff Tyler Dengler;

z.  Violating industry standards including those involving loading and securing cargo on a trailer, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment;

aa.  Failing to exercise due care towards Plaintiff Tyler Dengler under the circumstances, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment;

bb.  Failing to observe existing conditions after loading the subject Risinger trailer bales of corrugated boxes, and causing the bales to fall on Plaintiff Tyler Dengler;

cc.  Failing to have due regard for the loading and securing of the bales of corrugated boxes, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment, causing the bales to fall on Plaintiff Tyler Dengler;

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055      /s/DV

dd.    Acting without regard for the rights and safety of individuals unloading the subject Risinger trailer, including the Plaintiff Tyler Dengler;

ee.    Failing to use due care when loading and securing the bales in the subject trailer, including using strapping instead of load bars;

ff.    Engaging in careless loading of the subject Risinger trailer, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment;

gg.    Failing to be attentive and make necessary observations while loading the subject Risinger trailer;

hh.    Failing to observe warnings that the bales of corrugated boxes were not properly loaded or secured, which caused boxes to fall on Plaintiff Tyler Dengler;

ii.    Failing to make sure that bales of corrugated boxes properly loaded and secured and would not shift in transit;

jj.    Failing to make sure that the loading operations were complete;

kk.    Failing to ensure that there was no danger, to those loading from improper cargo securing the bales of corrugated boxes on the subject Risinger trailer;

ll.    Failing to load and secure the bales of corrugated boxes on the subject Risinger trailer in accordance with the policies and procedures of Uline, Inc.;

mm.    Failing to load and secure the bales of corrugated boxes on the subject Risinger trailer in accordance with the policies and procedures of Defendant Risinger;

nn.    Loading the subject Risinger trailer contrary to the safety practices as set forth in the by the Federal Motor vehicle Carrier Safety Administration's cargo securement rules, including those found at 49 CFR Parts 392 & 393;

oo.    Failing to make sure that any cargo in the trailer was properly loaded and secured;

pp.    Failing to load and secure the bales of corrugated boxes in order to avoid the boxes from falling on Plaintiff Tyler Dengler, although he had observed, or in the exercise of reasonable care, should have

FILED 5/19/2025 3:07 PM,Clerk of Judicial Division, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

observed that the boxes would fall out of the trailer and strike the Plaintiff, and causing him to be injured;

qq.    Allowing the loading and securing, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment, of the subject Risinger trailer without due regard to the rights and safety of Plaintiff Tyler Dengler;

rr.    Allowing the loading and securing of the subject Risinger trailer in violation of industry standards including those involving the loading and securing of cargo;

ss.    Loading and securing and/or continuing to load and secure the subject Risinger trailer although he knew, or in the exercise of reasonable care, should have known, that the trailer was not properly and safely secured or loaded;

tt.    Failing to anchor the bales of corrugated boxes to a point on the subject Risinger trailer, over, and/or around the boxes, and then attaching to an anchor point on the other side of the trailer;

uu.    Overpacking the subject Risinger trailer, which caused the bales of corrugated boxes to fall onto Plaintiff Tyler Dengler;

vv.    Violating the laws of the Commonwealth of Pennsylvania with respect to size weight and load, including, inter alia, securing loads in vehicles and fastening loads, including 75 Pa.C.S.A. § 4903;

ww.    Loading and securing the subject Risinger trailer while distracted, tired and/or impaired;

xx.    Loading and securing the subject Risinger trailer in violation of the Rules of the securing loads in vehicles and fastening loads and/or the laws of the Commonwealth of Pennsylvania and/or Federal Law and Regulations including, inter alia, 75 Pa. C.S.A. §§ 4903 and FMCSR, 49 CFR §§ 392.9 and 393.100 – 393.114, which conduct constitutes negligence as a matter of law;

yy.    Loading and securing the bales of corrugated boxes in the subject Ringer trailer in disregard for the safety of Plaintiff Tyler Dengler, including failing to use strapping that would not break during transport, and failing to use proper cargo securement equipment;

11

zz.  Failing to inspect or inadequately inspecting the bales of corrugated boxes that were loaded on the subject Risinger trailer in order to determine whether it was securely loaded; and,

aaa.  Failing to maintain or inadequately maintaining the subject Risinger trailer.

bbb.  Failing to use the appropriate tie-down and/or shoring bars or load bar for the working load unit, causing the bales of corrugated boxes to fall on Plaintiff Tyler Dengler;

ccc.  Failing to secure the load of corrugated boxes so to prevent the load from becoming loose or detached, causing the bales of corrugated boxes to fall on Plaintiff Tyler Dengler;

ddd.  Using strapping instead of load bars to secure the bales of corrugated boxes in the subject Risinger trailer, so to allow the cargo to shift and fall onto the Plaintiff;

eee.  Using tiedowns and securing devices which contained knots, thus making them inappropriate and unfit to use for proper securing of cargo, causing the bales of corrugated boxes to fall on Plaintiff Tyler Dengler;

fff.  Failing to request from his employer, Defendant Uline, that he would be provided with proper cargo securement equipment, causing the bales of corrugated boxes to fall on Plaintiff Tyler Dengler;

ggg.  Failing to comply with best practices load securement requirements on the North American Cargo Securement Standard Model Regulations;

hhh.  Failing to check and comply with performance requirements concerning the longitudinal, lateral and vertical accelerations that cargo securement and systems most withstand to satisfy the rules;

iii.  Failing to use cargo securement systems or equipment that were in good working order so that they failed to actually secure the bale of corrugated boxes, causing them to fall on the Plaintiff;

jjj.  Using cargo securement and equipment that was defective or deficient so as to adversely affect their performance, allowing the cargo to fall on Plaintiff.

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

53.    The negligence and/or carelessness exhibited by Defendant Sperzel was a direct, proximate and/or factual cause of the aforesaid subject incident.

54.    As a direct, proximate and/or factual result of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.

WHEREFORE, Plaintiff demands judgment against Defendant Sperzel, individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

## COUNT II
### PLAINTIFF TYLER DENGLER vs.
### DEFENDANT KRIS SPERZEL
### NEGLIGENCE PER SE

55.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 54 above as if same were set forth fully at length herein.

56.    There were in existence at the time of this collision the following provisions of the Motor Vehicle Code and the Federal Motor Carrier Safety Regulations, which provisions are incorporated herein by reference:

　　　　a.    Securing loads in vehicles, 75 Pa. C.S.A. § 4903;
　　　　b.    Inspection of cargo, cargo securement devices and systems, 49 CFR Part 392 Subpart I;
　　　　c.    Protection Against Shifting and Falling Cargo, 49 CFR Part 393 Subpart I, Section 393.100 through 393.114; and
　　　　d.    Tiedowns & securing devices must not contain knots, 49 CFC § 393 105(p)

57.    The purpose of the laws and regulations regarding cargo securement are to prevent cargo from shifting during transport and to prevent cargo from falling onto individuals, such as Plaintiff Tyler Dengler, who participated in unloading cargo, and protect such individuals from injury.

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

58.    The requirements set forth in the above-referenced statutes, codes and regulations impose a duty upon individuals, such as Defendant Sperzel, when loading a commercial motor vehicle.

59.    Defendant Sperzel breached the duty imposed upon him/her by the above-referenced statutes, codes and regulations by negligently and carelessly loading and securing the bales of corrugated boxes on the subject Risinger trailer in violation of said statutes, codes and regulations.

60.    The negligence and/or carelessness exhibited by Defendant Sperzel was a direct, proximate and/or factual cause of the subject motor vehicle collision and/or the injuries, damages, harms and losses suffered by Plaintiff Tyler Dengler.

61.    As a direct, proximate and/or factual cause of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.


WHEREFORE, Plaintiffs demand judgment against Defendant Sperzel individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

## COUNT III
### PLAINTIFF TYLER DENGER vs. DEFENDANT ULINE, INC.
### VICARIOUS LIABILITY

62.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 61 above as if same were set forth fully at length herein.

63.    Defendant Sperzel was/is an agent, ostensible agent, servant, workman and/or employee of Defendant Uline, Inc. and, when loading and securing the subject Risinger trailer, as aforesaid, was acting within the scope and course, and in furtherance of his duties, as an agent, ostensible agent, servant, workman and/or employee of Defendant Uline, Inc.

64.    Defendant Uline, Inc., is vicariously liable to Plaintiff Tyler Dengler, inasmuch as Defendant Sperzel was acting during the course of and within the scope of his employment with Defendant Uline, Inc. at the time of the loading and securing of the subject trailer.

14

65.    The negligence exhibited by Defendants was a direct, proximate and/or factual cause of the cargo shifting in transport and falling onto Plaintiff Tyler Dengler.

66.    As a direct, proximate and/or factual result of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.

WHEREFORE, Plaintiffs demand judgment against Defendant Uline, Inc., individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

## COUNT IV
### PLAINTIFF TYLER DENGLER vs. DEFENDANT ULINE, INC.
### NEGLIGENCE

67.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 66 above as if same were set forth fully at length herein.

68.    Defendant Uline, Inc., owed a duty of care Plaintiff Tyler Dengler to ensure that persons to whom they entrusted their trailers to be loaded and secured, including their employees, were competent and willing to load and secure the trailer in a safe, careful and prudent manner and in accordance with the statutory and/or regulatory laws.

69.    Defendant Uline, Inc., breached the duty of care they owed to Plaintiff Tyler Dengler, and acted negligently and/or carelessly by:

a.    Failing to establish a screening process, or establishing an inadequate screening process for the hiring of employees to load trailer;

b.    Failure to train employees in proper cargo containment practices;

c.    Hiring Defendant Sperzel and permitting him to load and secure trailers when they knew, or through the exercise of reasonable care should have known, that Defendant Sperzel was not a competent and safe trailer loader/dock worker and/or unwilling to load and secure the trailers in a safe manner and in accordance with the requirements of

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

statutory and/or regulatory law including FMCSR, 49 CFR § 393 Subpart I;

d.    Failing to monitor/inadequately monitoring Defendant Sperzel's employment so as to determine whether he was a competent and safe trailer loader/dock worker and/or willing to load and secure the trailer in a competent and safe manner and in accordance with the requirements of statutory and/or regulatory law, including FMCSR, 49 CFR § 393 Subpart I;

e.    Failing to monitor/inadequately monitoring Defendant Sperzel to ensure he was using appropriate cargo securement supplies and equipment, thus allowing Defendant Sperzel to use strapping that would break and fail during transport;

f.    Failing to train/inadequately train Defendant Sperzel as to the safe, careful and prudent loading and securing the trailer, including how to use cargo securement equipment, in accordance with the requirements of statutory and/or regulatory law, including FMCSR, 49 CFR § 393 Subpart I;

g.    Failing to instruct/inadequately instructing Defendant Sperzel as to the safe, careful and prudent loading and securing the trailer, including how to use cargo securement equipment, in accordance with the requirements of statutory and/or regulatory law, including FMCSR, 49 CFR § 393 Subpart I;

h.    Permitting Defendant Sperzel to load and secure the subject Risinger trailer, although Defendant knew or, in the exercise of reasonable care, should have known that Defendant Sperzel was incompetent inasmuch as Defendant Sperzel was either incapable of or unwilling to load and secure the trailer in a safe and prudent manner and in accordance with the requirements of statutory and/or regulatory law including FMCSR, 49 CFR § 393 Subpart I;

i.    Entrusting the subject Risinger trailer to Defendant Sperzel, and continually allowing him to load and secure the trailer, when they knew, or through the exercise of reasonable care, should have known that he would not properly secure the cargo in the trailer;

16

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

j.    Failing to monitor or inadequately monitoring Defendant Sperzel so as to determine whether he was capable of loading and securing the trailer in a safe manner and in accordance with the requirements of statutory and/or regulatory law so that the load would not shift and fall on Plaintiff Tyler Dengler;

k.    Failing to instruct or inadequately instructing Defendant Sperzel as to the safe, careful and prudent loading and securing the trailer when it knew, or through the exercise of reasonable care should have known that Defendant Sperzel was not a competent and safe trailer loader/dock worker and/or unwilling to load and secure trailers in a safe manner and in accordance with the requirements of statutory and/or regulatory law;

l.    Failing to establish a policy, or establishing an inadequate policy concerning the safe loading of trailers, including failing to provide appropriate cargo securement equipment and supplies;

m.    Allowing the loading and securing of the subject Risinger trailer without due regard to the rights, safety and position of Plaintiff Tyler Dengler by failing to provide appropriate cargo securement equipment and supplies, 49 CFR Part 393, Subpart I;

n.    Allowing the loading and securing of the subject Risinger trailer in violation of industry standards including those involving the loading and securing of trailer 49 CFR Part 393, Subpart I;

o.    Failing to inspect or inadequately inspecting the subject Risinger trailer in order to determine whether it was properly loaded and secured;

p.    Failing to provide Defendant Sperzel with appropriate cargo securement devices, which would have prevented cargo from shifting during transport and prevent cargo from falling onto individuals, such as Plaintiff Tyler Dengler;

q.    Not allowing Defendant Sperzel access to the appropriate cargo securement supplies and equipment, which would have prevented the cargo from shifting and falling on to the Plaintiff Tyler Dengler;

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

70.     The negligence and/or carelessness exhibited by Defendants was a direct, proximate and/or factual cause of the aforesaid subject incident heretofore described above.

71.     As a direct, proximate and/or factual result of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.


WHEREFORE, Plaintiffs demand judgment against Defendant Uline, Inc., individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.


## COUNT V
## TYLER DENGLER V. JOHN DOE DEFENDANT DRIVER
### NEGLIGENCE

72.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 71 above as if same were set forth fully at length herein.

73.     Defendant John Doe owed to Plaintiff Tyler Dengler a duty of care in driving the subject tractor trailer, which contained the cargo which fell on Plaintiff Tyler Dengler;

74.     Defendant John Doe breached the duty of care he owed to Plaintiff Tyler Dengler and acted negligently and carelessly by:

      a.     Failing to exercise reasonable care in driving, so as to cause the cargo to sift and fall;

      b.     Apply the brakes hard or suddenly causing the cargo to shift;

      c.     Failure to have his vehicle under proper and adequate control;

      d.     Failing to periodically check on the cargo placement as he traveled from Wisconsin to Pennsylvania;

      e.     Failing to secure cargo properly as to prevent the cardboard to become unsecure and fall on Plaintiff Tyler Dengler, in violation of regulations outlined at 49 CFR Part 39 3, Subpart I § 393.100 through 393.114;

18

f.   Failing to use cargo securement system to secure the load so it was capable of withstanding the forces of acceleration and deacceleration in violation of 49 CFR § 393.102;

g.   Failing to secure the cargo on all sides, especially towards the doors in violation of 49 CFR § 393.100 through 393.110;

h.   Allowing space to remain between the bales of cardboard and the container (trailer walls) and not having the cargo blocked, braced or immobilized in violation of 49 CFR § 393.110;

i.   Failing to use cargo containment systems, which outline the requirements of 49 CFR § 393.102, including breaking strength and working load limit;

j.   Using cargo securement devices and systems, which were damaged or defective in violation of 49 CFR § 393.104, et al;

k.   Failing to use tiedown strapping that meet manufacturing standards so they broke and failed to hold the cargo in violation of 49 CFR § 393.104(e)

q.   Using tiedowns, which contained knots, in violation of 49 CFR § 393.104(f);

r.   Failing to attach and secure tiedowns so as to prevent them from becoming loose, unfastened, opened or releasing during transit in violation of 49 CFR § 393.104(f);

s.   Using tiedown assembles of insufficient workload limit in violation of 49 CFR § 393.102;

t.   Failing to use friction mats, or friction mats that did not provide appropriate friction in violation of 49 CFR § 393.108;

u.   Failing to use strong enough synthetic cordage in violation of 49 CFR § 393.108;

v.   Failing to use sufficient number of tiedowns to secure the cargo in violation of 49 CFR § 393.110, which allowed cargo to shift and fall on Plaintiff Tyler Dengler;

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055      /s/DV

w.     Failing to meet general requirement for securing cargo in violation of 49 CFR § 393.106, including failing to firmly immobilize and/or securing cargo within the vehicle and failing to use structure of adequate strength, dunnage or dunnage bags, shoring bars, tiedowns or a combination of these;

x.     Failing to use tiedowns, which can be adjusted and tightened in violation of 49 CFR § 393.112;

y.     Failing to keep the cargo in the vehicle under control § 383.111(a)(16)

75.    The negligence and/or carelessness exhibited by Defendants was a direct, proximate and/or factual cause of the aforesaid subject incident heretofore described above.

76.    As a direct, proximate and/or factual result of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.

WHEREFORE, Plaintiffs demand judgment against Defendant John Doe, individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

## COUNT VI
### PLAINTIFF TYLER DENGLER V. DEFENDANT JOHN DOE
### NEGLIGENCE PER SE

77.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 76 above as if same were set forth fully at length herein.

78.    There were in existence at the time of this collision the following provisions of the Motor Vehicle Code and the Federal Motor Carrier Safety Regulations, which provisions are incorporated herein by reference:

a.     Securing loads in vehicles, 75 Pa. C.S.A. § 4903;
b.     Inspection of cargo, cargo securement devices and systems, 49 CFR Part 393 Subpart I;
c.     Protection Against Shifting and Falling Cargo, 49 CFR Part 393 Subpart I, Section 393.100 through 393.114; and

20

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

        d.     Tiedowns & securing devices must not contain knots, 49 CFR § 393 105(p)

79.    The purpose of the laws and regulations regarding cargo securement are to prevent cargo from shifting during transport and to prevent cargo from falling onto individuals, such as Plaintiff Tyler Dengler, who participated in unloading cargo, and protect such individuals from injury.

80.    The requirements set forth in the above-referenced statutes, codes and regulations impose a duty upon individuals, such as Defendant Sperzel, when loading a commercial motor vehicle.

81.    Defendant Sperzel breached the duty imposed upon him/her by the above-referenced statutes, codes and regulations by negligently and carelessly loading and securing the bales of corrugated boxes on the subject Risinger trailer in violation of said statutes, codes and regulations.

82.    The negligence and/or carelessness exhibited by Defendant Sperzel was a direct, proximate and/or factual cause of the subject motor vehicle collision and/or the injuries, damages, harms and losses suffered by Plaintiff Tyler Dengler.

83.    As a direct, proximate and/or factual cause of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.

WHEREFORE, Plaintiffs demand judgment against Defendant John Doe individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

## COUNT VII
### PLAINTIFF TYLER DENGER vs. DEFENDANT RISINGER BROTHERS TRANSFER INC. VICARIOUS LIABILITY

84.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 83 above as if same were set forth fully at length herein.

85.     Defendant Doe was/is an agent, ostensible agent, servant, workman and/or employee of Defendant Risinger and, when loading and securing the subject Risinger trailer, as aforesaid, , and driving the tractor trailer to Pennsylvania, was acting within the scope and course, and in furtherance of his duties, as an agent, ostensible agent, servant, workman and/or employee of Defendant Risinger.

86.     Defendant Risinger is vicariously liable for the carelessness, recklessness, and/or negligence of its agent, servant, worker, and/or employee, Defendant Doe.

87.     Defendant Risinger is vicariously liable to Plaintiff Tyler Dengler, inasmuch as Defendant Doe was acting during the course of and within the scope of his employment with Defendant Risinger at the time of the subject incident.

88.     The negligence exhibited by Defendants was a direct, proximate and/or factual cause of the subject motor vehicle collision, and Plaintiff's damages.

89.     As a direct, proximate and/or factual result of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.


WHEREFORE, Plaintiffs demand judgment against Defendant Risinger, individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

### COUNT VIII
### PLAINTIFF TYLER DENGLER vs. DEFENDANT RISINGER BROTHERS TRANSFER INC.
### DIRECT NEGLIGENCE

90.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 89 above as if same were set forth fully at length herein.

91.     Defendant Risinger owed a duty of care to ensure that persons to whom they entrusted their tractor and trailer to drive, including their employees, were competent and willing to drive, load and secure the trailer in a safe, careful and prudent manner and in accordance with the statutory and/or regulatory laws.

92.     Defendant Risinger is vicariously liable for the carelessness, recklessness, and/or negligence of its agent, servant, worker, and/or employee, Defendant Doe.

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

93.    Defendant Risinger breached the duty of care they owed to Plaintiff Tyler Dengler, and acted negligently and/or carelessly by:

    a.    Failing to establish a screening process, or establishing an inadequate screening process for the hiring of employees to work as tractor trailer drivers;

    b.    Hiring Defendant Doe and permitting him to load and/or secure trailers when they knew, or through the exercise of reasonable care should have known, that Defendant Doe was not a competent and safe trailer drivers and/or unwilling to load and secure the trailers in a safe manner and in accordance with the requirements of statutory and/or regulatory law including the Pa. MVC 75 Pa C.S. § 4903 and/or the FMCSR, 49 CFR Part 393 Subpart I, et seq;

    c.    Failing to monitor/inadequately monitoring Defendant Doe 's employment so as to determine whether he was a competent and safe trailer drivers willing to load and secure the trailer in a competent and safe manner and in accordance with the requirements of statutory and/or regulatory law, including the Pa. MVC 75 Pa. C.S. § 4903 and/or the FMCSR 49 CFR, Part 393, Subpart I, et seq;

    d.    Failing to train/inadequately train Defendant Doe as to the safe, careful and prudent driver of the trailer, including in accordance with the requirements of statutory and/or regulatory law, including the Pa. MVC 75 Pa. C.S. § 4910 and/or the FMCSR 49 CFR, Part 393, Subpart I, et seq;

    e.    Failing to instruct/inadequately instructing Defendant Doe as to the safe, careful and prudent loading and securing the trailer in accordance with the requirements of statutory and/or regulatory law, including the necessity to periodically check the load for its containment;

    f.    Entrusting the subject Risinger trailer to Defendant Doe, undertaking adequate measures to ensure that he was capable of operating said motor vehicle in a safe, lawful and prudent manner;

    g.    Entrusting the subject Risinger trailer to Defendant Doe, and continually allowing him to load and secure the trailer, when they knew, or through the exercise of reasonable care, should have known that he would not properly secure the load in the trailer;

    h.    Failing to instruct or inadequately instructing Defendant Doe as to the safe, careful and prudent loading and securing the trailer when it knew, or through the exercise of reasonable care should have known that Defendant Doe was not a competent and safe trailer driver and/or unwilling to load and secure trailers in a safe manner and in accordance with the requirements of statutory and/or regulatory law;

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

    i.      Failing to establish a policy, or establishing an inadequate policy concerning the safe drivers;

    j.      Allowing the loading and securing of the subject Risinger trailer without due regard to the rights, safety and position of Plaintiff Tyler Dengler;

    k.     Failing to inspect or inadequately inspecting the subject Risinger trailer in order to determine whether it was properly loaded and secured;

    l.      Failure to instruct drivers to periodically check the load;

    m.    Failing to provide cameras inside the trailer to monitor stability and containment of cargo;

    n.     Failing to hire or train employees on the relationship of cargo to vehicle control;

    o.     Failing to train drivers in the effects of speed and raod conditions on cargo stability.

94.    The negligence and/or carelessness exhibited by Defendants was a direct, proximate and/or factual cause of the aforesaid subject incident heretofore described above.

95.    As a direct, proximate and/or factual result of the foregoing, Plaintiff Tyler Dengler has incurred the injuries, damages, harms and losses previously described in paragraphs 37 through 49 above.

WHEREFORE, Plaintiffs demand judgment against Defendant Risinger individually and/or jointly and severally along with the remaining Defendants, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

Respectfully submitted,
SCHERLINE INJURY LAW

Date:   5/19/25        By:                      

Edith C. Rysdyk, Esquire
Attorney I.D. #72633
Attorney for Plaintiff
902 West Hamilton Street, Suite 120
Allentown, PA 18101
Phone: (610) 437-1100
Fax: (610) 437-1572
Email: erysdyk@scherlinelaw.com

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

## **VERIFICATION**

I verify that the statements made in the foregoing Complaint are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. 4904, relating to unsworn falsification to authorities.

Dated: 5/19/25                    _Tyler Dengler_
                                  Tyler Dengler

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

# EXHIBIT A

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055      /s/DV



## MASTER TRANSPORTATION SERVICES AGREEMENT

This Master Transportation Services Agreement (the "Agreement") is effective as of this 20th day of February, 2012 (the "Effective Date") by and between Uline, Inc. ("Uline"), a Delaware corporation with offices at 12575 Uline Drive, Pleasant Prairie, Wisconsin 53158 and Risinger Brothers Transfer Inc, with offices at Morton, IL ("Carrier"). The term "Carrier" includes, but is not limited to, all employees, agents, contractors and Affiliates of the Carrier. The term "Affiliate" means any business entity that, from time to time, directly or indirectly controls, is controlled by, or is under common control with Carrier, including subsidiaries, or that is a successor (whether by change of name, change of control, dissolution, merger, consolidation, reorganization, sale, license or other disposition) to Carrier of its business and assets. Uline and Carrier are collectively referred to as the "Parties" and individually as a "Party."

**WHEREAS,** Carrier is a motor carrier registered with the U.S. Department of Transportation ("DOT"), Federal Motor Carrier Safety Administration ("FMCSA"), in accordance with the provisions of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 13101 et seq. ("ICCTA"), and operating under U.S. DOT No. 244981 and FMCSA authority in Docket No. MC-172510 to transport goods in interstate commerce. Carrier's authority allows for its service between points in the United States and facilities of Uline;

**NOW THEREFORE,** in consideration of the covenants and conditions set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Scope of Services.**

   1.1 **Services.** Pursuant to the above authority, Carrier is able to provide contract carrier services (the "Services") designed to meet the distinct needs of Uline. The Services include, without limitation, spot negotiation and implementation of rates, spotting equipment, developing flexible rate packages tailored to individual Uline requirements, furnishing qualified drivers experienced in handling the type of goods which comprise Uline's freight, picking up freight on short notice, delivering freight at scheduled times, and closely coordinating all services and communications with Uline personnel.

   1.2 **Carrier's Responsibilities.** Without limiting the generality of the foregoing, Carrier shall, with respect to each Shipment (as defined herein) and at its cost and expense, (i) cause Shipments to be handled only by its personnel who are experienced in handling the type of goods to be shipped, (ii) provide motor vehicle equipment which is adequate and satisfactory for the Services to be performed under this Agreement, (iii) transport the goods comprising the Shipment with reasonable dispatch and deliver them in good order and condition, and (iv) comply with all laws and regulations, including without limitation procuring and maintaining such licenses and permits as are required by local, state or federal authorities with respect to all Services to be provided under this Agreement. For purposes of this agreement, a "Shipment" means the goods identified in (i) a request for transportation services issued to Carrier by Uline for the purpose of transporting such goods from, to or between any facility of Uline, or (ii) a request for

ULINE000039

transportation services issued to Carrier by a third party for the purpose of transporting such goods to a facility of Uline on a collect basis. As used in this Agreement, the term "Consignor" means the person or entity from whom or which a Shipment is received by the Carrier and the term "Consignee" means the person or entity to whom or which a Shipment is to be delivered by the Carrier.

1.3    Uniform Straight Bill of Lading. Carrier hereby agrees that all Services to be provided by Carrier with respect to each Shipment shall also be subject to the terms and conditions specified in any Uniform Straight Bill of Lading used in connection with a Shipment; provided, that to the extent that the terms and conditions of this Agreement conflict with the terms and conditions of the Uniform Straight Bill of Lading, this Agreement's terms and conditions shall govern.

1.4    Emergency Response Communication Requirements. Carrier shall cause all vehicles used by the Carrier for transportation of the commodities moved under this Agreement to be equipped with all prescribed emergency response information needed to fulfill the requirements of any law or regulation of any governmental entity having jurisdiction over Carrier, Uline or any other Consignor or Consignee of a Shipment, including without limitation all regulations promulgated from time to time by the federal Department of Transportation ("DOT"). Without limiting the generality of the foregoing, required emergency response information includes, without limitation, the DOT "Emergency Response Guidebook," Material Safety Data Sheets and any other items required pursuant to the DOT Emergency Response Communication Standard. Carrier shall have no duty to provide any Emergency Response or Material Safety Data Sheets for explosive, toxic waste, radioactive materials, infectious wastes or other hazardous materials that would require Carrier to increase its insurance limits to Five Million Dollars ($5,000,000) under DOT regulations and Uline agrees and represents that it will not tender such commodities to Carrier for transport under this Agreement.

1.5    Waiver of Liens. Carrier shall not withhold delivery of any Shipment due to any dispute with Uline regarding freight charges or otherwise. Carrier waives and releases any and all liens which it might have to any Shipment in its possession. Carrier also acknowledges and agrees that it will not drop a trailer other than at the designated business facilities designated by Uline. Carrier further agrees that in the event of any loss of or damage to the cargo that occurs as a result of its breach of this provision, the Carrier will indemnify Uline's customer for any such loss or damage, including reasonable attorneys' fees.

2.    **Cost and Payment.**

2.1    Pricing and Governing Publications. The consideration to be paid by Uline to Carrier for the Services described in this Agreement and the manner of payment shall be determined by reference to the pricing and rates provisions set forth in Exhibits A, B and E, which pricing and rates provisions cannot be overridden except in a writing signed by both Parties. Where reference is made in this Agreement to Carrier's general tariff, and where the terms and conditions of such tariff conflict with the terms and conditions of this Agreement, this Agreement shall be controlling.

ULINE000040

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055      /s/DV

2.2    <u>Payment</u>. Provided that Carrier is in compliance with the terms of this Agreement, Uline agrees to pay Carrier within thirty (30) days of receipt of Carrier's invoice.

2.3    <u>Non-Application of Penalties</u>. Any liability limitations, loss of discount provisions, credit payment time prerequisites to discounts, penalties, linear foot rules, protective service charges and arbitraries set forth in this Agreement or in any Carrier tariff will not be applicable except as set forth in the Exhibits which are hereto made a part of this Agreement.

3.    <u>Relationship of the Parties</u>.

3.1    <u>Independent Contractor</u>. Carrier shall act as an independent contractor and not as an employee or agent of Uline.  Carrier and its employees shall have no claims or rights to receive or participate in any employee benefit plans or arrangements of Uline.  As an independent contractor, Carrier shall have no authority, express or implied, to commit or obligate Uline in any manner whatsoever, except as specifically authorized from time to time in writing by an authorized representative of Uline.  Nothing contained in this Agreement shall be construed or applied to create a partnership, joint venture or affiliation.

3.2    <u>Uline's Logo</u>. During the term of this Agreement, Carrier and Uline may agree to place Uline's logo on trailers owned by Carrier.  The existence of Uline's logo on the Carrier's trailer(s) is for advertising purposes only and shall in no way be construed or applied to create a partnership, joint venture or affiliation between the Parties.  Notwithstanding the existence of Uline's logo on the Carrier's trailer(s), the Carrier shall be solely responsible for any and all claims, damages, liabilities, losses and/or expenses resulting from the Carrier's performance under this Agreement.  In the event that any claims, damages, liabilities, losses and/or expenses are brought forth or assessed against Uline as a result of the existence of Uline's logo on the Carrier's trailer(s), Carrier shall indemnify Uline for such claims, damages, liabilities, losses and/or expenses in accordance with Section 8 of this Agreement.

4.    <u>Loss or Damage and Carrier Liability</u>.

4.1    Without limiting the generality of Section 8 contained herein and consistent with the provisions of Exhibit D, Carrier shall be liable to Uline for damages resulting from cargo loss, damage or delay which may occur after any cargo has been entrusted to Carrier for transport.  Carrier will bear common carrier cargo loss and damage liability under 49 U.S.C. § 14706, pursuant to the terms and conditions in Exhibit D hereto made a part of this Agreement.

5.    <u>Confidentiality</u>.

5.1    "Confidential Information" means information identified by either Party as "Confidential" and/or "Proprietary."  Confidential Information shall include, but not be limited to, technical information, market research, membership data, analyses, studies, developments, processes, present and/or future product information, pricing information, business plans or other documents, information and materials that contain or reflect such information.

ULINE000041

5.2 <u>Disclosure</u>. Neither Party shall disclose to a third party Confidential Information of the other Party.  The Party receiving Confidential Information (the "Receiving Party") shall use the same degree of care as it uses to protect the confidentiality of its own confidential information of like nature, but no less than a reasonable degree of care, to maintain in confidence the Confidential Information of the Party disclosing Confidential Information (the "Disclosing Party").  The foregoing obligations shall not apply to any Confidential Information that: (a) can be demonstrated to have been publicly known at the time of the Disclosing Party's disclosure of such Confidential Information to the Receiving Party; (b) becomes part of the public domain or publicly known, by publication or otherwise, not due to any unauthorized act or omission by the Receiving Party; (c) can be demonstrated to have been independently developed or acquired by the Receiving Party without reference to or reliance upon such Confidential Information, as evidenced by the Receiving Party's written records; (d) is provided  to the Receiving Party by a third party who is under no obligation to the Disclosing Party to keep the information confidential; or (e) is required to be disclosed by law, provided that the Receiving Party takes reasonable and lawful actions to avoid and/or minimize such disclosure and promptly notifies the Disclosing Party so that the Disclosing Party may take lawful actions to avoid and/or minimize such disclosure. Upon request of the Disclosing Party or upon termination of this Agreement, the Receiving Party shall destroy all documents, papers and other matter in its possession or under its control which contain the Disclosing Party's Confidential Information and provide written certification of such destruction.

5.3 <u>Disclosure Damages</u>. The Receiving Party acknowledges that the use or disclosure of Confidential Information in a manner inconsistent with this Agreement may cause the Disclosing Party irreparable damage, and that the Disclosing Party shall have the right to obtain equitable and injunctive relief to prevent the unauthorized use or disclosure of Confidential Information. Nothing herein shall be construed as prohibiting the Disclosing Party from pursuing any other remedies available for unauthorized use or disclosure of Confidential Information or from pursuing any remedies for any other breach or threatened breach of the Agreement, including the recovery of damages.

5.4 <u>Carrier Personnel</u>. Each individual providing Services for Uline on behalf of Carrier, whether an employee of Carrier or otherwise, will be made aware of and subject to the provisions of this Section 5, and Carrier agrees to indemnify, defend and hold harmless Uline for any loss, cost, or damage (including reasonable attorneys' fees and costs) incurred by or assessed against Uline as a result of or in connection with any failure of any such individual to comply with the requirements of Sections 5.

6. <u>**Term and Termination**</u>.

6.1 <u>Term</u>. The term of this Agreement and all accompanying exhibits shall commence on the Effective Date set forth above and, unless sooner terminated pursuant to provisions herein, shall continue for one (1) year from the Effective Date (the "Original Term").  Upon the expiration of the Original Term, this Agreement shall automatically renew on a month-to-month basis unless terminated in accordance with this Section 6.

ULINE000042

FILED 5/19/2025 3:07 PM, Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

6.2    <u>Continuing Obligation</u>. Notwithstanding the termination of this Agreement for any reason, neither Party shall be relieved of any duty, obligation, debt or liability that arose or accrued prior to the effective termination date of this Agreement.

6.3    <u>Termination for Convenience</u>. Either Party may terminate this Agreement upon thirty (30) days' prior written notice to the other Party.

6.4    <u>Change to Exhibits</u>. Notwithstanding anything provided herein to the contrary during the term of this Agreement, either Party shall have the right to notify the other Party in writing of proposed changes to one or more of the Exhibits which are attached to this Agreement.  If the Parties agree to such changes, each Exhibit in question shall be revised in writing and the amended Exhibit shall, in its revised form, become part of this Agreement.   All Exhibits (as revised from time to time in accordance with this Agreement) form a part of and are hereby incorporated by reference into this Agreement.

6.5    <u>Termination for Cause</u>. Notwithstanding any provisions to the contrary, either Party may elect to terminate this Agreement for cause, effective immediately upon written notice of termination to the other Party, in accordance with the following:

(a)    the non-breaching Party may terminate upon the occurrence of a material breach of the other Party's obligations under this Agreement, if the breach is not cured within ten (10) business days after the breaching Party's receipt of written notice of the breach from the non-breaching Party;

(b)    the non-breaching Party may terminate upon the occurrence of a material breach that by its nature is not curable;

(c)    either Party may terminate the Agreement immediately if any assignment is made by the other Party for the benefit of creditors; if a receiver, trustee in bankruptcy or similar officer is appointed to take charge of any or all of the Party's property; if the other Party files a voluntary petition under federal bankruptcy laws or similar state statutes or if such a petition is filed against the other Party and is not dismissed within sixty (60) days; or if a Party shall admit in writing of its inability to pay its debts as they come due; or

(d)    Uline may terminate in the event of Carrier's failure to make progress so as to endanger performance, or in the event of Carrier's failure to provide adequate assurance of future performance.

6.6    <u>Carrier's Default</u>. In the event of Carrier's default, Uline may exercise any or all rights accruing to it, both at law or in equity.

6.7    <u>Rate Alterations by Law</u>. If at any time while this Agreement is in force and effect, any of the rates agreed upon are increased or altered by reason of any legislation or regulation of any federal, state, municipal or other governmental authority, either Party may terminate this Agreement upon twenty-four (24) hours' written notice to the other Party at any time after such legislation or regulation becomes effective.

ULINE000043

7. **Insurance.**

7.1 <u>Insurance Coverage</u>. At all times during the term of this Agreement and subject to Carrier's right to self-insure against any liabilities assumed hereunder, Carrier shall maintain insurance policies as prescribed in the terms and conditions set forth in the attached Exhibit C which is made a part hereof. Carrier shall, upon request, provide Uline with proof of the required coverage in form and substance reasonably satisfactory to Uline as to the issuance of and Carrier's maintenance of that insurance coverage.

7.2 <u>Self-Insurance</u>. Notwithstanding the terms and conditions set forth in Exhibit C, if Carrier meets all applicable federal requirements, Carrier may self-insure. Carrier shall furnish Uline with proof of self-insurance.

8. **Representations and Indemnifications.**

8.1 <u>Representations</u>. Uline and Carrier each represents and warrants to the other that: (a) it has the necessary power and authority to enter into this Agreement; (b) the execution and performance of this Agreement has been authorized by the necessary corporate or institutional action; (c) entry into and performance of this Agreement will not conflict with any provisions of law or the certificate of incorporation or by-laws of the Party; (d) no action by any governmental organization is necessary to make this Agreement valid and binding upon the Party; and (e) it possesses all licenses and other governmental approvals necessary to perform its obligations under this Agreement.

8.2 <u>Uline Indemnification</u>. Except for cargo loss and damage claims which are subject to Exhibit D attached hereto and incorporated herein, Carrier agrees to indemnify, defend and hold harmless Uline, its successors and assigns, and the respective directors, officers, employees, agents and representatives of Uline and their successors and assigns (the "Uline Indemnities") from and against any and all claims, damages, liabilities, losses and/or expenses (including attorneys' fees and costs and any claim or threatened claim of third parties) incurred by Uline that arise from Carrier's performance under this Agreement where such claims, damages, liabilities, losses and/or expenses are caused by or result from any: (a) negligence or intentional misconduct of Carrier; (b) the existence of Uline's logo on trailers owned by Carrier; (c) violation of applicable laws or regulations by the Carrier; or (d) breach of this Agreement by the Carrier, except to the extent such claims, damages, liabilities, losses and/or expenses represent consequential or special damages, or are the result of the negligence or other wrongful conduct of Uline. The purchase of insurance and furnishing of certificates as required by Exhibit C shall not in any way modify or limit Carrier's agreement to indemnify, defend, and hold harmless the Uline Indemnities, as required by this Agreement.

8.3 <u>Carrier Indemnification</u>. Uline agrees to indemnify, defend and hold harmless Carrier, its successors and assigns, and the respective directors, officers, employees, agents and representatives of Uline and their successors and assigns (the "Carrier Indemnities") from and against any and all claims, damages, liabilities, losses and/or expenses (including attorneys' fees and costs and any claim or threatened claim of third parties) incurred by Carrier that arise from Uline's performance under this Agreement where such claims, damages, liabilities, losses

-6-

ULINE000044

FILED 5/19/2025 3:07 PM Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

and/or expenses are caused by or result from any: (a) negligence or intentional misconduct of Uline; (b) violation of applicable laws or regulations by Uline; or (d) breach of this Agreement by Uline, except to the extent such claims, damages, liabilities, losses and/or expenses represent consequential or special damages, or are the result of the negligence or other wrongful conduct of the Carrier.

8.4     <u>Notice for Indemnification</u>. If a suit or other proceeding is brought or threatened in connection with any claims, damages, liabilities, losses and/or expenses, any indemnified Party ("Indemnitee") shall give prompt notice of the claims, damages, liabilities, losses and/or expenses to the indemnifying Party ("Indemnitor"); provided however, that the Indemnitee's failure to do so shall not reduce or diminish the Indemnitor's obligations hereunder except to the extent that the Indemnitor has been adversely affected or prejudiced by such failure. The Indemnitor shall have the right to control the defense or settlement of any third party claim giving rise to indemnification hereunder; provided however, the Indemnitor shall not, without the Indemnitee's prior written consent, settle any claim in a manner that admits liability on the part of the Indemnitee or that requires the Indemnitee to take or cease taking any action. The Indemnitee shall reasonably cooperate with the Indemnitor, at the Indemnitor's expense, in the defense as the Indemnitor may reasonably request (it being understood that nothing herein shall preclude the Indemnitee from consulting with its own counsel at its own expense).

9.     <u>**Miscellaneous**</u>.

9.1     <u>Assignments</u>. Carrier shall not, by contract, operation of law or otherwise, subcontract, assign, or otherwise transfer any rights or delegate any obligation under this Agreement without the prior written consent of Uline, which will not be unreasonably withheld or delayed. Any such assignment or delegation without Uline's prior written consent shall be voidable at Uline's option. No such assignment or delegation, with or without Uline's prior written consent, shall relieve Carrier of any of its obligations under this Agreement. Subject to the foregoing restriction on assignment and delegation by Carrier, this Agreement shall be fully binding upon, inure to the benefit of and be enforceable by Carrier, Uline, and their respective successors, assigns, and legal representatives. Uline may freely assign its rights and obligations under this Agreement without prior written consent of Carrier.

9.2     <u>Notices</u>. All notices, designations, consents or other formal communications shall be given in writing and delivered by courier, by mail, by electronic mail ("E-mail"), or by facsimile to that Party's address, E-mail address, or facsimile number set forth below. All such notices and communications shall be deemed received upon the earlier of (a) actual receipt thereof by the addressee, (b) actual delivery thereof to the appropriate address, (c) in the case of a facsimile transmission, upon transmission thereof by the sender and issuance by the transmitting machine of a confirmation slip confirming that the number of pages constituting the notice have been transmitted without error, or (d) confirmed receipt by the accepting party that the E-mail was received. In the case of notices sent by facsimile transmission, the sender shall contemporaneously mail a copy of the notice to the addressee at the address provided for below. However, such mailing shall in no way alter the time at which the facsimile notice is deemed received.

ULINE000045

FILED 5/19/2025 3:07 PM Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

| | |
|---|---|
| To Uline: | Uline, Inc.<br>12575 Uline Drive<br>Pleasant Prairie, WI 53158<br>Attn: William Sadecki<br><br>E-mail: wsadecki@uline.com<br>Facsimile: (262) 612-4251 |
| With Copy to: | Uline, Inc.<br>12575 Uline Drive<br>Pleasant Prairie, WI 53158<br>Attn: Sr. Corporate Counsel<br><br>E-mail: lbarry@uline.com<br>Facsimile: (262) 612-4282 |
| To Vendor: | Risinger Brothers Transfer Inc<br>225 W. Courtland St.<br>Morton, IL 61550<br>Attn: Dean Hoffman<br><br>E-Mail: deanhoffman@Risingertrans.com<br>Facsimile: (309) 266-5238, (309) 412-6323 |

9.3 Force Majeure. Time is of the essence in the performance of Carrier's obligations under this Agreement. However, Carrier shall not be liable for delays due to causes which are not reasonably foreseeable, which are beyond Carrier's control and which cannot be overcome by the exercise of reasonable diligence; provided, however, that Carrier gives Uline prompt written notice of the circumstances giving rise to the delay, the anticipated duration of the delay and the action being taken by Carrier to overcome or mitigate the delay.

9.4 Non-Waiver. No course of dealing, course of performance, or failure of either Party to strictly enforce any provision in the body of this Agreement is to be construed as a waiver thereof.

9.5 Governing Law and Venue. This Agreement shall be inspected, construed and enforced in accordance with the laws of the State of Wisconsin without regard to its conflict of laws provisions. The Parties are subject to, and agree to submit to, the jurisdiction of the courts of the State of Wisconsin for the purposes of resolving any dispute or action relating to this Agreement. Carrier consents to the exclusive jurisdiction of the courts of the State of Wisconsin with venue laid in Kenosha County, Wisconsin.

9.6 Compliance with Laws. Carrier shall comply, and shall ensure that the Services and Carrier's subcontractors and suppliers of every tier comply, with all applicable laws, ordinances, rules, regulations, orders, licenses, permits, and other requirements, now or hereafter in effect, of any governmental authority. Carrier shall furnish such documents as may be required to effect or evidence such compliance. All laws,

ULINE000046

ordinances, rules, regulations and orders required to be incorporated in agreements of this character are incorporated in this Agreement by this reference.

9.7   **Uline Logo and Other Corporate Identification**. Uline's trademark, logo and other corporation identification marks are owned by Uline and may be used only with Uline's prior written consent and in a manner consistent with Uline's written instructions. Carrier shall acquire no rights with respect to any such marks.

9.8   **Non-Solicitation**. During the term of this Agreement and for one (1) year following its termination, Carrier agrees not to directly or indirectly solicit the employment or retention of any of Uline's employees or of any consultant or third party providing services to or for the benefit of Uline.

9.9   **Severability**. Provisions of this Agreement shall be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of this Agreement.

9.10  **Headings**. Captions and headings contained in this Agreement have been included for ease of reference and convenience and will not be considered in interpreting or construing this Agreement.

9.11  **Survival**. The provisions of Sections 5, 6.2, 7, 8, 9.8, 9.11, and 9.12 will survive any termination of this Agreement.

9.12  **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties hereto and shall supersede any and all prior written or oral promises or representations. No amendments to or modifications of this Agreement shall be binding upon either Party unless made in writing and signed by authorized representatives of both Parties. Any terms or conditions proposed by Carrier inconsistent with or in addition to the terms and conditions contained in this Agreement shall be void and of no effect unless specifically agreed to by Uline in writing.

9.13  **Counterparts**. This Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, but all of which together shall constitute one and the same instrument.

9.14  **Capitalized Terms**. The capitalized terms used in the Exhibits attached hereto shall have the same meaning as such terms have in this Agreement. The terms and conditions set forth in the Exhibits attached hereto are hereby incorporated into this Agreement by reference as if fully set forth herein.

9.15  The Parties agree that for all purposes, this Agreement is and shall be a Contract within the meaning of 49 U.S.C. § 14101(b). To the extent that any right or remedy provided in this Agreement conflicts or is otherwise inconsistent with the rights and remedies provided by the ICCTA, Uline and Carrier hereby expressly waive all such statutory rights and remedies which are inconsistent with this Agreement. All rights and remedies provided by that Act which have not been specifically waived herein and which are not inconsistent or in any conflict with the rights and remedies provided herein shall continue to apply to transportation services provided by

ULINE000047

FILED 5/19/2025 3:07 PM Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

Carrier for Uline pursuant to this Agreement.  Nothing in this Agreement shall be construed as waiving any provision of ICCTA governing Carrier's compliance with all statutory registration, insurance, and/or safety requirements.

**CARRIER:**                                     **ULINE:**

**Risinger Brothers Transfer Inc.**              **Uline, Inc.**

By: _____                      By: _____

Name: Robert Porter                              Name: William Sadecki

Title: Director of Logistics                     Title: National Transportation Director

Date: 8/20/12                                    Date: 3/30/12

- 10 -

ULINE000048

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055      /s/DV

# EXHIBIT B

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV



### MASTER TRANSPORTATION SERVICES AGREEMENT

This Master Transportation Services Agreement (the "Agreement") is effective as of this 18th day of April, 2012 (the "Effective Date") by and between Uline, Inc. ("Uline"), a Delaware corporation with offices at 12575 Uline Drive, Pleasant Prairie, Wisconsin 53158 and J.B. Hunt Transport, Inc. with offices at Lowell, AR ("Carrier"). The term "Carrier" includes, but is not limited to, all employees, agents, and Affiliates of the Carrier. The term "Affiliate" means any business entity that, from time to time, directly or indirectly controls, is controlled by, or is under common control with Carrier, including subsidiaries, or that is a successor (whether by change of name, change of control, dissolution, merger, consolidation, reorganization, sale, license or other disposition) to Carrier of its business and assets. Uline and Carrier are collectively referred to as the "Parties" and individually as a "Party."

**WHEREAS,** Carrier is a motor carrier registered with the U.S. Department of Transportation ("DOT"), Federal Motor Carrier Safety Administration ("FMCSA"), in accordance with the provisions of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 13101 et seq. ("ICCTA"), and operating under U.S. DOT No. 80806 and FMCSA authority in Docket No. MC-135797 to transport goods in interstate commerce. Carrier's authority allows for its service between points in the United States and facilities of Uline;

**NOW THEREFORE,** in consideration of the covenants and conditions set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Scope of Services.**

    1.1    Services. Pursuant to the above authority, Carrier is able to provide contract carrier services (the "Services") designed to meet the distinct needs of Uline. The Services include, without limitation, spot negotiation and implementation of rates, spotting equipment, developing flexible rate packages tailored to individual Uline requirements, furnishing qualified drivers experienced in handling the type of goods which comprise Uline's freight, picking up freight on short notice, delivering freight at scheduled times, and closely coordinating all services and communications with Uline personnel.

    Notwithstanding anything to the contrary herein, Carrier may reject any load tendered or request to perform a special service by Uline and is under no obligation to accept any particular volume of traffic. Carrier will transport freight of all kinds in interstate commerce from, to, or between all points and places in the United States, except: "Packing Group I material of any hazard class"; Class 1.1, Explosives; Class 1.2, Explosives; Class 1.3, Explosives; Class 2.3, Poison Gas; Class 4.2, Spontaneously Combustible; Class 4.3, Dangerous When Wet Material; Class 6.2, Infectious Agents; Class 7, Radioactive Material; Hazardous Waste of any Hazard Class; Asbestos; Carbon Black; Any material containing Cyanide; Any material containing Paraquat; Any material classified as "Poison by Inhalation"; Polychlorinated Biphenyls (PCB); Any material in a container with over 1,000 gallon capacity; Garbage or waste of any type; Used Equipment – must have approval from Corporate Safety; Temperature controlled materials; and, Household Goods.

ULINE000006

4.  **Loss or Damage and Carrier Liability**.

4.1  Consistent with the provisions of Exhibit D, Carrier shall be liable to Uline for damages resulting from cargo loss or damage which may occur after any cargo has been entrusted to Carrier for transport.  Carrier will bear common carrier cargo loss and damage liability under 49 U.S.C. § 14706, pursuant to the terms and conditions in Exhibit D hereto made a part of this Agreement.

5.  **Confidentiality**.

5.1  "Confidential Information" means information identified by either Party as "Confidential" and/or "Proprietary."  Confidential Information shall include, but not be limited to, technical information, market research, membership data, analyses, studies, developments, processes, present and/or future product information, pricing information, business plans or other documents, information and materials that contain or reflect such information.

5.2  Disclosure. Neither Party shall disclose to a third party Confidential Information of the other Party.  The Party receiving Confidential Information (the "Receiving Party") shall use the same degree of care as it uses to protect the confidentiality of its own confidential information of like nature, but no less than a reasonable degree of care, to maintain in confidence the Confidential Information of the Party disclosing Confidential Information (the "Disclosing Party").  The foregoing obligations shall not apply to any Confidential Information that: (a) can be demonstrated to have been publicly known at the time of the Disclosing Party's disclosure of such Confidential Information to the Receiving Party; (b) becomes part of the public domain or publicly known, by publication or otherwise, not due to any unauthorized act or omission by the Receiving Party; (c) can be demonstrated to have been independently developed or acquired by the Receiving Party without reference to or reliance upon such Confidential Information, as evidenced by the Receiving Party's written records; (d) is provided  to the Receiving Party by a third party who is under no obligation to the Disclosing Party to keep the information confidential; or (e) is required to be disclosed by law, provided that the Receiving Party takes reasonable and lawful actions to avoid and/or minimize such disclosure and promptly notifies the Disclosing Party so that the Disclosing Party may take lawful actions to avoid and/or minimize such disclosure. Upon request of the Disclosing Party or upon termination of this Agreement, the Receiving Party shall destroy all documents, papers and other matter in its possession or under its control which contain the Disclosing Party's Confidential Information and provide written certification of such destruction.

5.3  Disclosure Damages. The Receiving Party acknowledges that the use or disclosure of Confidential Information in a manner inconsistent with this Agreement may cause the Disclosing Party irreparable damage, and that the Disclosing Party shall have the right to obtain equitable and injunctive relief to prevent the unauthorized use or disclosure of Confidential Information. Nothing herein shall be construed as prohibiting the Disclosing Party from pursuing any other remedies available for unauthorized use or disclosure of Confidential Information or from pursuing any remedies for any other breach or threatened breach of the Agreement, including the recovery of damages.

-4-

ULINE000009

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

5.4    <u>Carrier Personnel</u>. Each individual providing Services for Uline on behalf of Carrier, whether an employee of Carrier or otherwise, will be made aware of and subject to the provisions of this Section 5, and Carrier agrees to indemnify, defend and hold harmless Uline for any loss, cost, or damage (including reasonable attorneys' fees and costs) incurred by or assessed against Uline as a result of or in connection with any failure of any such individual to comply with the requirements of Sections 5.

6.    <u>Term and Termination</u>.

6.1    <u>Term</u>. The term of this Agreement and all accompanying exhibits shall commence on the Effective Date set forth above and, unless sooner terminated pursuant to provisions herein, shall continue for one (1) year from the Effective Date (the "Original Term"). Upon the expiration of the Original Term, this Agreement shall automatically renew on a month-to-month basis unless terminated in accordance with this Section 6.

6.2    <u>Continuing Obligation</u>. Notwithstanding the termination of this Agreement for any reason, neither Party shall be relieved of any duty, obligation, debt or liability that arose or accrued prior to the effective termination date of this Agreement.

6.3    <u>Termination for Convenience</u>. Either Party may terminate this Agreement upon thirty (30) days' prior written notice to the other Party.

6.4    <u>Change to Exhibits</u>. Notwithstanding anything provided herein to the contrary during the term of this Agreement, either Party shall have the right to notify the other Party in writing of proposed changes to one or more of the Exhibits which are attached to this Agreement. If the Parties agree to such changes, each Exhibit in question shall be revised in writing and the amended Exhibit shall, in its revised form, become part of this Agreement. All Exhibits (as revised from time to time in accordance with this Agreement) form a part of and are hereby incorporated by reference into this Agreement.

6.5    <u>Termination for Cause</u>. Notwithstanding any provisions to the contrary, either Party may elect to terminate this Agreement for cause, effective immediately upon written notice of termination to the other Party, in accordance with the following:

(a)    the non-breaching Party may terminate upon the occurrence of a material breach of the other Party's obligations under this Agreement, if the breach is not cured within ten (10) business days after the breaching Party's receipt of written notice of the breach from the non-breaching Party;

(b)    the non-breaching Party may terminate upon the occurrence of a material breach that by its nature is not curable;

ULINE000010

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055      /s/DV

8.2  **Uline Indemnification**. Except for cargo loss and damage claims which are subject to Exhibit D attached hereto and incorporated herein, Carrier agrees to indemnify, and hold harmless Uline, and the respective directors, officers, employees, agents and representatives of Uline from and against any and all claims, damages, liabilities, losses and/or expenses incurred by Uline from a third party to the extent caused from Carrier's performance under this Agreement where such claims, damages, liabilities, losses and/or expenses are caused by or result from any: (a) negligence or intentional misconduct of Carrier; (b) the existence of Uline's logo on trailers owned by Carrier; (c) violation of applicable laws or regulations by the Carrier; or (d) breach of this Agreement by the Carrier. Carrier's indemnification obligation shall not apply to any extent that any claims, lawsuits, proceedings, judgments, costs, charges, expenses, losses, or liability of every type and kind or any combination thereof are the result of the negligence or intentional acts or other wrongful conduct of Uline, its employees, agents, consignors, consignees or customers. The purchase of insurance and furnishing of certificates as required by Exhibit C shall not in any way modify or limit Carrier's agreement to indemnify, defend, and hold harmless the Uline Indemnities, as required by this Agreement.

8.3  **Carrier Indemnification**. Uline agrees to indemnify and hold harmless Carrier, and the respective directors, officers, employees, agents and representatives of Uline from and against any and all claims, damages, liabilities, losses and/or expenses incurred by Carrier from a third party to the extent caused from Uline's performance under this Agreement where such claims, damages, liabilities, losses and/or expenses are caused by or result from any: (a) negligence or intentional misconduct of Uline; (b) violation of applicable laws or regulations by Uline; or (c) breach of this Agreement by Uline. Uline's indemnification obligation shall not apply to any extent that any claims, lawsuits, proceedings, judgments, costs, charges, expenses, losses, or liability of every type and kind or any combination thereof are the result of the negligence or other wrongful conduct of the Carrier.

8.4  **Notice for Indemnification**. If a suit or other proceeding is brought or threatened in connection with any claims, damages, liabilities, losses and/or expenses, any indemnified Party ("Indemnitee") shall give prompt notice of the claims, damages, liabilities, losses and/or expenses to the indemnifying Party ("Indemnitor"); provided however, that the Indemnitee's failure to do so shall not reduce or diminish the Indemnitor's obligations hereunder except to the extent that the Indemnitor has been adversely affected or prejudiced by such failure. The Indemnitor shall have the right to control the defense or settlement of any third party claim giving rise to indemnification hereunder; provided however, the Indemnitor shall not, without the Indemnitee's prior written consent, settle any claim in a manner that admits liability on the part of the Indemnitee or that requires the Indemnitee to take or cease taking any action. The Indemnitee shall reasonably cooperate with the Indemnitor, at the Indemnitor's expense, in the defense as the Indemnitor may reasonably request (it being understood that nothing herein shall preclude the Indemnitee from consulting with its own counsel at its own expense).

ULINE000012

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

8.5     <u>Shared Liability</u>. Should there be shared liability resulting in such loss, liability, damage, claim or expense, the responsible parties shall contribute to such claim in the ratios of their respective fault.  In no event shall either party be liable for incidental, consequential (including lost profits, "chargebacks", or other penalties for late delivery), special, punitive or exemplary damages in connection with the goods or the services rendered hereunder.

9.     **Miscellaneous.**

9.1     <u>Assignments</u>. The parties shall not, by contract, operation of law or otherwise, assign, or otherwise transfer any rights or delegate any obligation under this Agreement without the prior written consent of the other party, which will not be unreasonably withheld or delayed.  Any such assignment or delegation without the other parties prior written consent shall be voidable. No such assignment or delegation, with or without one party's prior written consent, shall relieve the other party of any of its obligations under this Agreement.  Subject to the foregoing restriction on assignment and delegation by Carrier, this Agreement shall be fully binding upon, inure to the benefit of and be enforceable by Carrier, Uline, and their respective successors, assigns, and legal representatives.  Uline may freely assign its rights and obligations under this Agreement without prior written consent of Carrier.

Notwithstanding anything provided herein to the contrary, the parties recognize that for operating convenience in the fulfillment of its duties and obligations under this contract, Carrier may wish to retain the services of other authorized carriers as subcontractors pursuant to lawful substituted service, interlining or other contractual arrangements. As consideration for Uline's acceptance of such subcontracting arrangements, Carrier agrees as follows:  (1) All subcontracting arrangements will be conducted with subcontractors which meet and maintain all U.S. DOT requirements and (2) Carrier may do so at its expense, in which case Carrier shall continue to be liable for any loss or damage to said shipments to the same extent that Carrier would be liable if it performed the transportation.

ULINE000013

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

9.2   **Notices**. All notices, designations, consents or other formal communications shall be given in writing and delivered by courier or by mail. All such notices and communications shall be deemed received upon the earlier of (a) actual receipt thereof by the addressee or (b) actual delivery thereof to the appropriate address.

      To Uline:

      Uline, Inc.
      12575 Uline Drive
      Pleasant Prairie, WI 53158
      Attn: William Sadecki

      E-mail: wsadecki@uline.com
      Facsimile: (262) 612-4251

      With Copy to:

      Uline, Inc.
      12575 Uline Drive
      Pleasant Prairie, WI 53158
      Attn: Sr. Corporate Counsel

      E-mail: lbarry@uline.com
      Facsimile: (262) 612-4282

      To Vendor:

      J.B. Hunt Transport, Inc.
      615 J.B. Hunt Corporate Dr.
      Lowell, AR 72745
      Attn: Director of Litigation & Contact Management

      E-Mail: Jeremy_kirgan@jbhunt.com
      Facsimile: (479) 820-5547

9.3   **Force Majeure**. Time is of the essence in the performance of Carrier's obligations under this Agreement. However, Carrier shall not be liable for delays due to causes which are not reasonably foreseeable, which are beyond Carrier's control and which cannot be overcome by the exercise of reasonable diligence.

9.4   **Non-Waiver**. No course of dealing, course of performance, or failure of either Party to strictly enforce any provision in the body of this Agreement is to be construed as a waiver thereof.

9.5   **Governing Law and Venue**. This Agreement shall be inspected, construed and enforced in accordance with the laws of the State of Georgia without regard to its conflict of laws provisions. The Parties are subject to, and agree to submit to, the jurisdiction of the courts of the State of Georgia for the purposes of resolving any dispute or action relating to this Agreement.

9.6   **Compliance with Laws**. Carrier shall comply, with all applicable laws, ordinances, rules, regulations, orders, licenses, permits, and other requirements, now or hereafter in effect, of any governmental authority. Carrier shall furnish such documents as may be required to effect or evidence such compliance. All laws, ordinances, rules, regulations and orders required to be incorporated in agreements of this character are incorporated in this Agreement by this reference.

ULINE000014

9.7    Uline Logo and Other Corporate Identification. Uline's trademark, logo and other corporation identification marks are owned by Uline and may be used only with Uline's prior written consent and in a manner consistent with Uline's written instructions. Carrier shall acquire no rights with respect to any such marks.

9.8    Severability. Provisions of this Agreement shall be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of this Agreement.

9.9    Headings. Captions and headings contained in this Agreement have been included for ease of reference and convenience and will not be considered in interpreting or construing this Agreement.

9.10    Survival. The provisions of Sections 5, 6.2, 7, 8, 9.8, 9.11, and 9.12 will survive any termination of this Agreement.

9.11    Entire Agreement. For non-dedicated transportation services, this Agreement constitutes the entire agreement between the Parties hereto and shall supersede any and all prior written or oral promises or representations. No amendments to or modifications of this Agreement shall be binding upon either Party unless made in writing and signed by authorized representatives of both Parties. Any terms or conditions proposed by Carrier inconsistent with or in addition to the terms and conditions contained in this Agreement shall be void and of no effect unless specifically agreed to by Uline in writing.

9.12    Counterparts. This Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, but all of which together shall constitute one and the same instrument.

9.13    Capitalized Terms. The capitalized terms used in the Exhibits attached hereto shall have the same meaning as such terms have in this Agreement. The terms and conditions set forth in the Exhibits attached hereto are hereby incorporated into this Agreement by reference as if fully set forth herein.

9.14    The Parties agree that for all purposes, this Agreement is and shall be a Contract within the meaning of 49 U.S.C. § 14101(b). To the extent that any right or remedy provided in this Agreement conflicts or is otherwise inconsistent with the rights and remedies provided by the ICCTA, Uline and Carrier hereby expressly waive all such statutory rights and remedies which are inconsistent with this Agreement. All rights and remedies provided by that Act which have not been specifically waived herein and which are not inconsistent or in any conflict with the rights and remedies provided herein shall continue to apply to transportation services provided by Carrier for Uline pursuant to this Agreement. Nothing in this Agreement shall be construed as waiving any provision of ICCTA governing Carrier's compliance with all statutory registration, insurance, and/or safety requirements.

**CARRIER:**

**J.B. Hunt Transport, Inc.**

By: _Shelley Simpson_

Name: Shelley Simpson

Title: Chief Marketing Officer & President of ICS

Date: 7/16/12

**ULINE:**

**Uline, Inc.**

By: _____

Name: William Sadecki

Title: National Transportation Director

Date: 8/1/12

- 11 -

ULINE000016

In the event Uline tenders to Carrier commodities the transportation of which by motor vehicle is not subject to the jurisdiction of the Surface Transportation Board (STB) or other governmental agency with jurisdiction over interstate or intrastate transport, such service and the parties' rights and obligations with respect thereto shall be governed by this Transportation Agreement.

1.2    Carrier's Responsibilities. Without limiting the generality of the foregoing, Carrier shall, with respect to each Shipment (as defined herein) and at its cost and expense, (i) cause Shipments to be handled by personnel who are experienced in handling the type of goods to be shipped, (ii) provide motor vehicle equipment which is adequate and satisfactory for the Services to be performed under this Agreement, (iii) transport the goods comprising the Shipment with reasonable dispatch and deliver them in good order and condition, and (iv) comply with all laws and regulations, including without limitation procuring and maintaining such licenses and permits as are required by local, state or federal authorities with respect to all Services to be provided under this Agreement.  For purposes of this agreement, a "Shipment" means the goods identified in (i) a request for transportation services issued to Carrier by Uline for the purpose of transporting such goods from, to or between any facility of Uline, or (ii) a request for transportation services issued to Carrier by a third party for the purpose of transporting such goods to a facility of Uline on a collect basis.  As used in this Agreement, the term "Consignor" means the person or entity from whom or which a Shipment is received by the Carrier and the term "Consignee" means the person or entity to whom or which a Shipment is to be delivered by the Carrier.

Notwithstanding anything provided herein to the contrary, Carrier makes no guarantees as to on-time pickup or delivery and assumes no liability or responsibility whatsoever for any late pickup or delivery including, but not limited to any damages, penalties, fines, costs, expenses, "chargebacks", or other amounts of any kind due to late delivery or pickup.

1.3    Uniform Straight Bill of Lading. Carrier hereby agrees that all Services to be provided by Carrier with respect to each Shipment shall also be subject to the terms and conditions specified in any Uniform Straight Bill of Lading used in connection with a Shipment; provided, that to the extent that the terms and conditions of this Agreement conflict with the terms and conditions of the Uniform Straight Bill of Lading, this Agreement's terms and conditions shall govern.

1.4    Emergency Response Communication Requirements. Carrier shall cause all vehicles used by the Carrier for transportation of the commodities moved under this Agreement to be equipped with all prescribed emergency response information needed to fulfill the requirements of any law or regulation of any governmental entity having jurisdiction over Carrier, Uline or any other Consignor or Consignee of a Shipment, including without limitation all regulations promulgated from time to time by the federal Department of Transportation ("DOT").  Without limiting the generality of the foregoing, required emergency response information includes, without limitation, the DOT "Emergency Response Guidebook," Material Safety Data Sheets and any other items required pursuant to the DOT Emergency Response Communication Standard.  Carrier shall have no duty to provide any

ULINE000007

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055     /s/DV

Emergency Response or Material Safety Data Sheets for explosive, toxic waste, radioactive materials, infectious wastes or other hazardous materials that would require Carrier to increase its insurance limits to Five Million Dollars ($5,000,000) under DOT regulations and Uline agrees and represents that it will not tender such commodities to Carrier for transport under this Agreement.

1.5     <u>Waiver of Liens</u>. Carrier shall not withhold delivery of any Shipment due to any dispute with Uline regarding freight charges or otherwise. Carrier waives and releases any and all liens which it might have to any Shipment in its possession. Carrier also acknowledges and agrees that it will not drop a trailer other than at the designated business facilities designated by Uline.

## 2.     <u>Cost and Payment</u>.

2.1     <u>Pricing and Governing Publications</u>. The consideration to be paid by Uline to Carrier for the Services described in this Agreement and the manner of payment shall be determined by reference to the pricing and rates provisions set forth in Exhibits A, B and E, which pricing and rates provisions cannot be overridden except in a writing signed by both Parties. Where reference is made in this Agreement to Carrier's general tariff, and where the terms and conditions of such tariff conflict with the terms and conditions of this Agreement, this Agreement shall be controlling.

2.2     <u>Payment</u>. Provided that Carrier is in compliance with the terms of this Agreement, Uline agrees to pay Carrier within thirty (30) days of receipt of Carrier's invoice.

## 3.     <u>Relationship of the Parties</u>.

3.1     <u>Independent Contractor</u>. Carrier shall act as an independent contractor and not as an employee or agent of Uline. Carrier and its employees shall have no claims or rights to receive or participate in any employee benefit plans or arrangements of Uline. As an independent contractor, Carrier shall have no authority, express or implied, to commit or obligate Uline in any manner whatsoever, except as specifically authorized from time to time in writing by an authorized representative of Uline. Nothing contained in this Agreement shall be construed or applied to create a partnership, joint venture or affiliation.

3.2     <u>Uline's Logo</u>. During the term of this Agreement, Carrier and Uline may agree to place Uline's logo on trailers owned by Carrier. The existence of Uline's logo on the Carrier's trailer(s) is for advertising purposes only and shall in no way be construed or applied to create a partnership, joint venture or affiliation between the Parties. In the event that any claims, damages, liabilities, losses and/or expenses are brought forth or assessed against Uline as a result of the existence of Uline's logo on the Carrier's trailer(s), Carrier shall indemnify Uline for such claims, damages, liabilities, losses and/or expenses in accordance with Section 8 of this Agreement.

ULINE000008

FILED 5/19/2025 3:07 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2025-C-2055    /s/DV

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

| | | |
|---|---|---|
| TYLER DENGLER | : | |
| 558 Benner Road, Apt 202 | : | **No.:** |
| Allentown, PA 18104 | : | |
| Plaintiff, | : | CIVIL DIVISION |
| v. | : | |
| | : | JURY TRIAL OF TWELVE |
| | : | (12) DEMANDED |
| KRIS SPERZEL | : | |
| 6178 S. New York Avenue | : | |
| Cudahy, WI 53110 | : | |
| & | : | |
| ULINE, INC. | : | |
| **Address:** | : | |
| 12575 Uline Drive | : | |
| Pleasant Prairie, WI 53158 | : | |
| **Address:** | : | |
| 700 Uline Way | : | |
| Allentown, PA 18106 | : | |
| & | : | |
| Risinger Brothers Transfer Inc. | : | |
| 225 W. Courtland Street | : | |
| Morton, IL 61550 | : | |
| & | : | |
| John Doe Driver, believed to be an employee of | : | |
| Risinger Brothers & Driver of Subject | : | |
| Tractor Trailer | : | |
| Defendants. | : | |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:    Edith C. Rysdyk, Esquire

Signature:

Name:    Edith C. Rysdyk, Esquire

Attorney No. (if applicable):    72633

25